In the Matter of Edward E. McNALLY, District Attorney,

Regarding sanctions imposed in State v. Knight, and State v. Wheeler.

No. S–6009.

Supreme Court of Alaska.

Aug. 18, 1995.

William H. Hawley and Cynthia M. Hora, Assistant Attorneys General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for petitioner, Edward E. McNally.

Christine S. Schleuss, Schleuss & McComas, Anchorage, for respondent, Superior Court, Third Judicial District. Robert L. Eastaugh and Susan Orlansky, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for amicus curiae, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

RABINOWITZ, Justice.

## I. *INTRODUCTION*

The District Attorney of Anchorage, Edward McNally, appealed the superior court's imposition of monetary sanctions against him in the amount of $300. The sanctions were imposed pursuant to Civil Rule 95 for McNally's failure to either appear personally or to have an assistant appear on his behalf at a calendar call held in Kenai in connection with two separate Seward criminal cases.[1] The court of appeals affirmed the superior court's imposition of sanctions. McNally then filed a petition for hearing from the court of appeals' judgment. This court subsequently granted the petition for hearing.

Essentially, for the reasons stated and analysis applied by the court of appeals, we affirm the court of appeals' disposition.[2]

## II. *FACTUAL BACKGROUND AND PROCEEDINGS*

The essential facts as set forth in the court of appeals' memorandum opinion are as follows:

Effective August 1, 1992, the Criminal Division of the Attorney General's office in Juneau shifted responsibility for prosecuting Seward criminal cases from the Kenai District Attorney's office to the Anchorage District Attorney's office. The Anchorage District Attorney's office assigned the Seward cases to Assistant District Attorney Ethan Berkowitz. Evidently no one in the Anchorage District Attorney's office arranged for the Kenai District Attorney's office to coordinate with it concerning the scheduling of pending Seward cases. Similarly, no one in the Anchorage District Attorney's office formally notified the trial courts in Kenai—through which the Seward cases are handled—of the transfer of responsibility.

Judge Cranston scheduled a trial call in Kenai in various pending cases, including two Seward cases—*State v. Wheeler,* 3KN-S92–738CR, and *State v. Knight,* 3KN-S92–630CR,—for September 3, 1992. Calendaring orders in *Wheeler* and *Knight* were sent to the Kenai District Attorney's office, whose attorneys had previously appeared in connection with the cases. On

---

1. Currently, Civil Rule 95(b) provides:

    In addition to its authority under (a) of this rule and its power to punish for contempt, a court may, after reasonable notice and an opportunity to show cause to the contrary, and after hearing by the court, if requested, impose a fine not to exceed $1,000.00 against any attorney who practices before it for failure to comply with these rules or any rules promulgated by the supreme court.

    Civil Rule 95(b) applies to criminal proceedings. *State v. Superior Court,* 743 P.2d 381, 382 (Alaska App.1987); Alaska Criminal Rule 50(b). In September 1992, Civil Rule 95(b) authorized fines of up to $500.

2. Justices Rabinowitz and Compton would affirm the court of appeals' affirmance of the superior court's imposition of monetary sanctions against the Anchorage District Attorney. Chief Justice Moore, joined by Justice Matthews, would reverse the court of appeals' decision and vacate the superior court's orders imposing sanctions against McNally entered in the two criminal cases. Given that Justice Eastaugh is not participating in this matter, the result is equal division of the participating justices as to the proper resolution of the merits of this petition for hearing. This division of the court has the legal consequence of affirming the court of appeals' affirmance of the imposition of monetary sanctions against District Attorney McNally.

September 2, 1992, the Kenai District Attorney's office received a copy of Judge Cranston's September 3 calendar, which listed *Wheeler* and *Knight* as scheduled for trial call at 2:30 p.m.; the calendar was not sent to Anchorage.

That same day, September 2, Ethan Berkowitz spoke by telephone with Seward Court personnel and asked if there were any upcoming matters he should know about. Berkowitz was told that there were none. Later that day, Berkowitz spoke by telephone with Judge Cranston's secretary about motions for continuances that had been filed in two pending Seward cases, one of which was *Wheeler*. Berkowitz asked for a fax of the motions paperwork; he also asked Judge Cranston's secretary to forward him a copy of the forthcoming Seward calendar. (The record does not disclose precisely when cases were calendared to be heard in Seward.)

No mention of the trial call in Kenai was made during Berkowitz' telephone conversation with Judge Cranston's secretary. That afternoon, Berkowitz' office received the faxes Berkowitz had requested from her. The continuance paperwork in *Wheeler* was accompanied by a memorandum from Judge Cranston's secretary indicating "this is set for 9/3/92 trial call. Please call me today if you oppose or non-oppose." Berkowitz was occupied with other matters when the faxes arrived in Anchorage. A secretary placed them in his "in basket," but they were soon covered by other incoming documents and Berkowitz did not see them before the end of the following business day—after the time for trial call in *Wheeler* and *Knight* had already come and gone.

At the trial call hearing in Kenai, a representative of the Kenai District Attorney's office was present to handle Kenai cases, but no one appeared in connection with the Seward matters. When Judge Cranston called the Seward cases, the assistant district attorney from Kenai informed the judge that the matters were being handled out of the Anchorage office. After efforts to reach an attorney in the Anchorage District Attorney's office by telephone from the courtroom proved fruit-less, Judge Cranston issued an order requiring District Attorney McNally to appear and show cause why monetary sanctions should not be imposed against him for failing to appear for the trial calls in *Wheeler* and *Knight.*

Following a hearing on the issue of sanctions, Judge Cranston found, in relevant part, that "Mr. McNally's mismanagement of case assignments caused the failure of an attorney to appear for the September 3, 1992 calendar call." The judge imposed a fine of $150 against McNally in each case for failing to appear.

*McNally v. Superior Court,* Mem.Op. & J. No. 2770, at 1–4 (Alaska App., September 22, 1993).

## III. *DISCUSSION*

### A. *McNally's Challenges to the Superior Court's Findings of Fact*

It is against this factual background that District Attorney McNally challenged several of the superior court's predicate findings of fact relating to notice, which furnished the underlying basis for the imposition of its sanctions orders. McNally also challenged several of the superior court's conclusions of law. As indicated at the outset, we are in agreement with and adopt both the court of appeals' analysis and disposition of the issues McNally raised before that court.

█ We now turn to McNally's contentions regarding the superior court's findings of fact. McNally's contention that the Anchorage District Attorney's office did not receive either fax or telephonic notice of the September 3 trial calendar call hearings is without merit. As the court of appeals correctly concluded, the record shows that

> faxed communication concerning *Wheeler,* however, clearly disclosed that that case was set for trial call the following day. Faxed notice was thus given as to one of the two cases.

*Id.* at 4.

More significantly, the court of appeals further concluded that the record established that the superior court's calendaring orders, as well as a copy of the court's September 3

calendar, were distributed to the Kenai District Attorney's office. Based on the foregoing, the court of appeals properly held that:

This distribution amounted to full and sufficient notice on the state of the scheduled hearings, since Kenai prosecutors had previously appeared in connection with the cases and the Kenai trial court clerk's office had never been formally notified of the transfer of responsibility to Anchorage.

*Id.* at 5.

Finally, as to the adequacy of notice issue raised by McNally, the court of appeals came to the conclusion that any lack of faxed or telephonic notice to Anchorage was wholly unnecessary to support the superior court's "core" conclusion that the "Anchorage District Attorney's office's failure to appear was basically unexcused." *Id.* More specifically, the court of appeals held that

the Anchorage District Attorney's office's failure to be aware of the hearings *resulted from its failure to provide formal notice to the court system of the transfer of responsibility over Seward cases from Kenai to Anchorage and/or its failure to make arrangements with the Kenai District Attorney's Office for cooperation with respect to scheduling.*

*Id.* (emphasis added).[3]

B. *McNally's Challenges to the Superior Court's Legal Determinations*

■ We now address McNally's challenges to certain of the superior court's legal rul-

ings.[4] McNally contended that Civil Rule 95(b) applies only to violations of rules and that his failure to appear at the calendaring proceedings did not implicate any formal rule of court.[5] McNally bases this contention on his characterization of the superior court's regular scheduling of trial call hearings as an informal practice related to the type of local rules that are now prohibited. The court of appeals rightly rejected this argument stating:

McNally appears to be mistaken, however, since the superior court's authority to hold trial call hearings and to compel parties' attendance thereat finds provision within the ambit of Alaska Criminal Rule 22(a)(4).[6] The duty of the District Attorney's office to attend any properly noticed hearings inheres in Rule 3.4(c) of the Alaska Rules of Professional Conduct.[7]

*Id.* at 7.

■ McNally next argued that the superior court erred in imposing monetary sanctions without finding that he acted with a culpable mental state. In rejecting this contention the court of appeals noted that the superior court expressly found "McNally's failure to appear attributable to 'mismanagement of case assignments[.]'" *Id.* at 8. In turn, the court of appeals concluded that this was tantamount to a finding of negligence on McNally's part, reasoning that

the record supports the conclusion that McNally acted negligently in failing to

---

3. Implicit in our affirmance of the court of appeals' disposition of McNally's notice contentions is our agreement with the court of appeals' rejection of McNally's reliance on Berkowitz' affidavit. Here again in our view the court of appeals did not err in holding that Berkowitz' informal conversation with Judge Cranston's secretary concerning continuances in pending Seward cases "did not suffice as formal notice to the court system that the Anchorage office had replaced Kenai on Seward cases and that future calendaring orders should have been directed to Anchorage." *Id.* at 6.

4. As the court of appeals observed, "None of the grounds asserted by McNally, however, were raised below; and none have been included in his statement of points on appeal. In any event, none of the legal grounds appear to have merit." *Id.* at 7.

5. *See* note 1, *supra,* for the text of Civil Rule 95(b).

6. Criminal Rule 22(a)(4) provides:
   (a) At any time after the return of the indictment or the filing of the information the court upon motion of any party or upon its own motion may invite the attorneys to appear before it for a conference in open court, at which the defendant shall have the right to be present, to consider:
   . . . .
   (4) Such other matters as may aid in the disposition of the proceeding.

7. Rule of Professional Conduct 3.4(c) provides:
   A lawyer shall not knowingly violate or disobey an order of a tribunal or the rules of a tribunal except for an open refusal based on an assertion that the order is invalid or that no valid obligation exists.

take formal, systematic measures to assure that the court system was apprised in a timely and adequate manner of the changes resulting from the transfer of responsibility over Seward cases from Kenai to Anchorage. The record further supports the conclusion that the failure to appear for which McNally was sanctioned resulted from this negligence.

*Id.*

■ McNally advanced the additional contention that the superior court's sanction orders deprived him of due process of law "since he was asked to show cause why he should not be sanctioned for failure to appear and was never placed on notice of the court's intent to impose sanctions for 'mismanagement of case assignments.'" *Id.* at 9. Observing that this argument confuses the conduct he was sanctioned for with the underlying causes of that conduct, the court of appeals held that McNally did in fact receive adequate notice of the conduct for which the court contemplated and did in fact impose sanctions: "the unjustified failure of the Anchorage District Attorney's office to appear for the trial call hearings in *Wheeler* and *Knight*." *Id.* Since "[a]ll that is required is that the notice be sufficient to acquaint counsel with the nature of the alleged infraction," here the order to show cause was fully sufficient to accomplish this end. *Davis v. Superior Court,* 580 P.2d 1176, 1180 (Alaska 1978).

■ McNally's last contention is that the superior court erred because it failed to give him an initial warning before imposing monetary sanctions against him. In support of this argument, McNally relies on our opinion in *Davis,* 580 P.2d at 1180. *Davis* does

contain language suggesting that an initial warning is generally preferable to monetary sanctions when a supervising attorney is held responsible for violations of a subordinate on the theory of "administrative mismanagement." *Id.*

Central to the court of appeals' rejection of this point was its interpretation that the text from *Davis,* upon which McNally relies, appears to be only advisory in nature concluding that it did "not construe it to preclude judges from ever imposing sanctions against a supervising attorney without prior warning." [8] *Id.* at 8. We are not persuaded that the court of appeals erred in its disposition of this initial warning issue. In brief, we agree with the court of appeals that the text of *Davis* does not impose a mandatory requirement of an initial warning before monetary sanctions could lawfully be imposed against a supervising attorney.

AFFIRMED.[9]

EASTAUGH, J., not participating.

MOORE, Chief Justice, with whom MATTHEWS, J., joins, dissenting.

In voting to affirm, Justice Rabinowitz adopts the court of appeals' reading of this court's opinion in *Davis v. Superior Court,* 580 P.2d 1176 (Alaska 1978). Because, on the facts of this case, I believe that the superior court was required to give a warning prior to the imposition of sanctions under *Davis,* I respectfully dissent.

In *Davis,* the superior court fined the Fairbanks District Attorney, Harry Davis, fifty dollars for failing to send a prepared attorney to an omnibus hearing in a case Davis was actively handling. In remanding

---

**8.** The court of appeals further said:

> McNally was not simply being sanctioned vicariously for the inappropriate acts of an assistant; instead, he was responsible in his own right, as District Attorney, for failure to take the type of institutional measures that could have prevented the unfortunate situation that occurred in this case—a situation that seems all too predictable in the absence of such measures.
>
> *Id.* at 8–9.

**9.** In general we are not adverse to requiring an initial warning to supervising attorneys as a

predicate to the imposition of sanctions. Such a requirement would accord supervising attorneys the opportunity to consider the feasibility of instituting remedial measures. In turn, our courts would be unambiguously placed on notice that initial warnings are required before the imposition of sanctions against supervising attorneys is authorized. Further, this matter could be submitted to our standing advisory committees on both Civil and Criminal Rules of Procedure for their recommendations, if any, regarding the adoption of formal rules requiring initial warnings to supervising attorneys.

the case to the trial court to allow Davis an opportunity to present any excuse he might have for this failure, the *Davis* court discussed the propriety of sanctions against a supervising attorney:

> We believe that some further comment is required with reference to the administrative duties of a person, such as the district attorney, who is in charge of a multi-attorney office. We do not believe that by virtue of his office, such a person may individually be held responsible for all derelictions of those serving under him. If, however, a court finds that violations of rules are occurring due to mismanagement of assignments, we believe it to be preferable for the judge initially to advise the managing attorney of the problem. If such problem is not alleviated, we see no reason why the court should not then be able to proceed by issuing appropriate orders and compelling compliance under either its contempt powers or, in the case of violation of rules of court, by means of sanctions imposed under Rule 95(b).

*Id.* at 1180. Thus, in most cases, a supervising attorney must be first advised of the alleged "mismanagement" and given an opportunity to address the problem before sanctions are appropriate.

Judge Cranston concluded that *Davis* did not require the court to issue McNally a warning prior to imposing sanctions in this case. In affirming this ruling, the court of appeals emphasized that "McNally was not simply being sanctioned vicariously for the inappropriate acts of an assistant [but] was responsible in his own right, as District Attorney, for failure to take the type of institutional measures that could have prevented the unfortunate situation that occurred." *McNally v. Superior Court,* Mem.Op. & J. No. 2770 at 8–9 (Alaska App., September 22, 1993). I find this rationale unpersuasive.

Whenever a court seeks to hold a supervising attorney responsible for the misconduct of a subordinate under an "administrative mismanagement" theory, the court is seeking to impose sanctions for violations of court rules caused by the supervising attorney's own negligent conduct as an administrator. I believe that a warning should be dispensed with only in those cases where the supervising attorney either knew of or condoned a subordinate's violation of court rules, or where the attorney's "administrative mismanagement" was so grossly negligent that knowledge of such violations may be imputed.[1]

Applying this rule to the instant case, I would hold that the problems which arose at the Kenai calendar call did not stem from the kind of "administrative mismanagement" which merits immediate punitive sanctions. There is no evidence suggesting that McNally knew of or condoned Berkowitz' non-appearance. There is also no evidence suggesting that McNally was "grossly negligent" in assigning responsibility for the Seward cases to Berkowitz or in relying on Berkowitz' discharge of this responsibility. Finally, there is no evidence suggesting that the Kenai superior court had experienced previous difficulties with McNally's office. Because I would reverse the court of appeals' decision and vacate the superior court's orders imposing sanctions against McNally entered in *State v. Knight* (Case No. 3KN–S92–630 Cr.)

---

**1.** In this context, the Alaska Rule of Professional Conduct governing the responsibilities of a partner or supervisory lawyer provides useful guidance.

**Rule 5.1. Responsibilities of a Partner or Supervisory Lawyer.**

(a) A partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct.

(b) A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct.

(c) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:

(1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

and *State v. Wheeler* (Case No. 3KN–S92–738 Cr.), I dissent.[2]

**2.** Because I would resolve the case on this issue, I do not address the other arguments presented on appeal.